FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 15, 2026

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:24-CR-0073-RHW |
| Plaintiff, | **ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL OR MOTION FOR NEW TRIAL** |
| vs. | |
| CASSANDRA GEORGE, | |
| Defendant. | **ECF No. 171** |

On July 9, 2026, the Court conducted a hearing on Defendant's Motion for Judgment of Acquittal under Fed. R. Crim. P. 29 or Motion for New Trial under Fed. R. Crim. P. 33. Justin Lonergan represented Defendant, who was present and in custody. Assistant United States Attorney Michael Ellis appeared on behalf of the United States. The Court has reviewed the briefing, heard oral argument, and is fully informed.

Defendant seeks judgment of acquittal on both counts of conviction, contending the Government presented insufficient evidence that Ms. George did not act in reasonable defense of another. Defendant also seeks a new trial contending that: (1) Defendant's right to testify free of undue influence was

ORDER - 1

compromised by the victim's behavior and presence at trial, (2) the evidence weighs sufficiently against the verdict, and (3) there was potential for juror confusion regarding the jury instructions.  For the reasons stated orally on the record and below, the Court denies the requests for entry of judgment of acquittal and new trial.

## I.    BACKGROUND

### A. Procedural Background

On May 23, 2024, Defendant was indicted on one count of assault with a dangerous weapon in Indian Country in violation of 18 U.S.C. §§ 113(a)(3), 1153 and one count of assault resulting in serious bodily injury in Indian Country in violation of 18 U.S.C. §§ 113(a)(6), 1153.  ECF No. 1.  The Indictment alleged that on May 21, 2022, Defendant intentionally assaulted Trent Tatshama within the boundaries of the Confederated Tribes of the Colville Reservation with a sharp object, with intent to do bodily harm and resulting in serious bodily injury.  The matter was reassigned to the undersigned on May 4, 2026.  ECF No. 137.  Trial was held on May 11-12, 2026.  At the close of the Government's case in chief, Defendant orally moved for judgment of acquittal.  The Court denied the motion.  Defendant presented evidence and Defendant testified.  The Court instructed the jury based on the parties' jointly-proposed set of final jury instructions.  On May 13, 2026, the jury returned guilty verdicts on both counts of the Indictment.  Defendant timely filed the

ORDER - 2

instant post-trial motion.

Prior to the hearing, the Court entered a text order notifying the parties to be prepared to also address the testimony and argument at trial regarding the victim's injuries and the force used in wounding him. *See* ECF No. 189.

**B. Summary of Evidence at Trial**

The following is only a brief summary of the evidence to assist in understanding this Order.

The following facts were stipulated and given to the jury:

1.    As a result of being struck or wounded on or about May 21, 2022, Trent Tatshama suffered serious bodily injury, as Trent Tatshama suffered bodily injury that involved (1) substantial risk of death; (2) extreme physical pain; (3) protracted and obvious disfigurement; or (4) protracted loss or impairment of the function of a body part, organ, or mental faculty.
2.    The Defendant, Cassandra George, has some quantum of Indian blood and was a member of, or affiliated with, a federally recognized tribe – the Confederated Tribes of the Colville Reservation – on or about May 21, 2022.  The Defendant, Cassandra George, is therefore an Indian, and was an Indian on or about May 21, 2022.
3.    The Confederated Tribes of the Colville Reservation is, and was on or about May 21, 2022, a federally recognized tribe.
4.    The residence, surrounding property, and roadway located at or near 810 Sixth Avenue East, Omak, Washington 98841, is within the external boundaries of the Colville Indian Reservation and in Indian Country.

ECF No. 154 at 17 (Court's Final Jury Instruction No. 14).

Mr. Tatshama testified that on or about the evening of May 21, 2022, he had used marijuana and drank hard alcohol to the point of intoxication and was at his residence in Omak, where the Defendant had also been staying.  ECF No. 171-1 at

ORDER - 3

71. Mr. Tatshama testified that after 1:00 a.m. on May 21, 2022, Robert Hahn entered his residence and said, "Where is Trent at?  I'm going to fuck him up." ECF No. 171-1 at 22, 25.  Mr. Tatshama and Mr. Hahn had fought on three prior occasions.  *Id*. at 12-17, 64.  Mr. Tatshama testified he grabbed his baseball bat and walked Mr. Hahn outside to the four-door sedan that he arrived in and told him to leave.  ECF No. 171-1 at 30-31.  When Mr. Tatshama turned around, Mr. Hahn threw a "softball-size" rock that passed by Mr. Tatshama's head.  *Id*.  Mr. Tatshama then tossed his bat aside and ran to confront Mr. Hahn.  *Id*. at 40.  Mr. Tatshama testified they exchanged punches and then Mr. Hahn tried to get into the back seat of the car, while Mr. Tatshama grabbed his ankle trying to drag him out of the car.  *Id*. at 41.  Mr. Tatshama also testified he slammed the car door on Mr. Hahn's forearms while Mr. Hahn was holding onto part of the car.  *Id*. at 76.  Mr. Hahn was 60 pounds physically heavier and eight inches taller than Mr. Tatshama. Mr. Tatshama testified both that he was pulling Mr. Hahn out of the car and that he had pulled Mr. Hahn out of the car on the ground, then hit him again, when the Defendant stabbed him in the back with a barbecue fork.  *Id*. at 44, 77-78.

Raelyn Shawl testified both Mr. Tatshama and Mr. Hahn are her cousins.  She described checking on Mr. Tatshama earlier in the evening in question as he seemed intoxicated and very belligerent.  ECF No. 169 at 6.  She was at the store across the street when she saw a car pull up with its lights off, watched someone pick up a rock,

ORDER - 4

then walk into the house.  She heard yelling and then saw Mr. Hahn throw a rock at Mr. Tatshama, Mr. Tatshama throw a bat to the ground and Mr. Tatshama run after Mr. Hahn.  *Id*. at 14.  Mr. Hahn was inside the back seat of the car on his back and did not want to get out, meanwhile Mr. Tatshama was trying to get him out of the car.  *Id*. at 14, 19.  Ms. Shawl and her brother, Issaiah Harry, ran to the car to help Mr. Tatshama try to get Mr. Hahn out of the car and while watching Mr. Tatshama try to "rip" him out, Defendant stabbed Mr. Tatshama in the back "[l]ike it was literally out of nowhere."  *Id*. at 15.

Issaiah Harry testified he saw Mr. Hahn throw the rock toward the porch of the residence where Mr. Tatshama was standing and then take off running toward the car he had arrived in.  ECF No. 171-3 at 5.  He witnessed Mr. Tatshama toss the bat aside and chase Mr. Hahn toward the car.  *Id*. at 6.  Mr. Harry testified that as Mr. Tatshama tried to pull Mr. Hahn out of the car, Defendant "ran up out of nowhere and stabbed" Mr. Tatshama.  *Id*. at 6.

Tatiana Clark testified she heard about a fight and arrived at the scene as Mr. Tatshama and Mr. Hahn were engaged in a "tussle around and fist – like a fistfight."  ECF No. 183-2 at 4.  She said Mr. Tatshama stopped fighting because he was stabbed in the back by the Defendant.  ECF No. 183-2 at 4.

Defendant testified she is Mr. Hahn's mother.  ECF No. 183-4 at 4.  She and Mr. Tatshama were staying at the same residence.  Defendant was unaware of the

ORDER - 5

history of fights between Mr. Tatshama and Mr. Hahn. On the evening in question, she heard yelling, so she went outside and saw Mr. Tatshama with a baseball bat and Mr. Hahn standing in front of him. Defendant testified that Mr. Tatshama was "very aggressive" and "swinging around the baseball bat, hitting it on the ground," and then hit Mr. Hahn in the leg. *Id*. at 9-10. Defendant testified that she told her son to "get out of here" and he ran toward the car. Defendant then picked up a barbecue fork and went over to where Mr. Tatshama was trying to "jerk [Mr. Hahn] out of the car by his legs," at which point she "hit [Mr. Tatshama] with the barbecue fork." *Id*. at 11. Defendant testified she thought it was "too many people . . . against him" and if she hit him with the fork, it would "turn his attention onto me, and my son would be able to get away safe." ECF No. 183-3 at 12.

## II.    LEGAL STANDARDS

### A. Rule 29 Motion for Judgment of Acquittal

Federal Rule of Criminal Procedure 29 requires the Court to set aside a guilty verdict, and enter a judgment of acquittal, on "any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a), (c). "It is well settled that a district court does not have unlimited discretion in resolving a Rule 29(c) motion for judgment of acquittal." *United States v. Dreitzler*, 577 F.2d 539, 545 (9th Cir. 1978). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact

ORDER - 6

could have found the essential elements of the crime beyond a reasonable doubt."

*Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

In ruling on a Rule 29 motion, the Court must "first, . . . consider the evidence presented at trial in the light most favorable to the prosecution." *United States v. Nevils*, 598 F.3d 1158, 1164 (9th Cir. 2010).  A court cannot "usurp" the jury's role by "considering how it would have resolved the conflicts, made the inferences, or considered the evidence at trial." *Id*. (internal citation omitted). "Rather, when faced with a record of historical facts that supports conflicting inferences, a reviewing court must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."  *Id*. (internal citation and quotations omitted).

Second, a reviewing court "must determine whether this evidence, so viewed, is adequate to allow 'any rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt.' " *Id*. (quoting *Jackson*, 443 U.S. at 319).  In *Nevils*, the Ninth Circuit, sitting en banc, explained the "second step protects against the rare occasions in which 'a properly instructed jury may . . . convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt." *Id*. (quoting *Jackson*, 443 U.S. at 317).  *Nevils* emphasized that "a reviewing court *may not* ask whether a finder of fact could

ORDER - 7

have construed the evidence produced at trial to support acquittal." *Id*. at 1164 (emphasis added).

"In ruling on a Rule 29(c) motion, a district court must bear in mind that 'it is the exclusive function of the jury to determine the credibility of the witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts.' " *United States v. Rojas*, 554 F.2d 938, 943 (9th Cir. 1977), *supplemented by* 574 F.2d 476 (9th Cir. 1978), (quoting *United States v. Nelson*, 419 F.2d 1237, 1241 (9th Cir. 1969)); *see also United States v. Alvarez-Valenzuela*, 231 F.3d 1198, 1201-02 (9th Cir. 2000) ("[A]ny conflicts in the evidence are to be resolved in favor of the jury's verdict."). "The hurdle to overturn a jury's conviction based on a sufficiency of the evidence challenge is high." *United States v. Rocha*, 598 F.3d 1144, 1153 (9th Cir. 2010).

A defendant may move for a judgment of acquittal at various junctures and this choice impacts which evidence a district court may consider in assessing the motion. Defendant erroneously suggests that "Rule 29-proof" is based only on the evidence presented by the Government in its case in chief. *See* ECF No. 171 at 12, 13 ("The United States failed to supply evidence on which a jury could be firmly convinced…). While this would be true when evaluating a Rule 29 motion raised at the end of the Government's case, when a defendant moves for acquittal after the jury convicts, the court considers all evidence presented at trial, including the

ORDER - 8

defense case. *See United States v. Crozier*, 640 F. App'x 100, 102–03 (2d Cir. 2016) ("[T]o the extent [the defendant] argues insufficient evidence to challenge the denial of his [Rule] 29 motion, he waived this argument by thereafter presenting a defense and, accordingly, we evaluate his sufficiency challenge based on the entire record.  In particular, because [the defendant] testified in his own defense at trial, the jury was entitled to disbelieve him and to 'use its disbelief to supplement the other evidence against him.' ") (citations omitted); *United States v. Bonventre*, No. 10-CR-228-LTS, 2014 WL 3673550, at *3 (S.D.N.Y. July 24, 2014) ("[U]nder Rule 29(c), the court may consider the defense case and if a defendant testifies[,] . . . the jury is entitled to draw negative inferences from the defendant's trial testimony or use it 'to reach contrary conclusions.' " (quoting *United States v. Roldan–Zapata*, 916 F.2d 795, 803 (2d Cir. 1990))), aff'd in part, 646 F. App'x 73 (2d Cir. 2016).

**B. Rule 33 Motion for New Trial**

Federal Rule of Criminal Procedure 33(a) authorizes the court to "vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  A motion for a new trial is "directed to the discretion of the district judge" and "should be granted only in exceptional cases in which the evidence preponderates heavily against the verdict." *United States v. Pimentel*, 654 F.2d 538, 545 (9th Cir. 1981) (citation and internal quotation marks omitted).  "A

ORDER - 9

district court's power to grant a motion for a new trial is much broader than its power to grant a motion for judgment of acquittal." *United States v. Alston*, 974 F.2d 1206, 1211 (9th Cir. 1992). The "heavy burden" of proving a new trial is warranted rests with the defendant. *United States v. Klein*, No. 3:22-CR-84-SI, 2023 WL 6481846, at *2 (D. Or. Oct. 5, 2023). In considering a motion for a new trial, the Court "need not view the evidence in the light most favorable to the verdict; it may weigh the evidence and in so doing evaluate for itself the credibility of the witnesses." *United States v. Kellington*, 217 F.3d 1084, 1095 (9th Cir. 2000) (citation omitted).

## III.    DISCUSSION

### A. Motion Judgment of Acquittal

Defendant's motion for judgment of acquittal challenges the sufficiency of the evidence for a single element of her convictions. To find Defendant guilty of either offense, the jury had to find beyond a reasonable doubt that Defendant "did not act in reasonable defense of another." *See* ECF No. 154 at 12-13 (Final Instruction No. 10 (sixth element), No. 11 (fifth element)). At trial the Court instructed the jury based on the parties' joint proposed instruction that:

> Use of force is justified when a person reasonably believes that it is necessary for the defense of another against the immediate use of unlawful force. However, a person must use no more force than appears reasonably necessary under the circumstances. Force likely to cause death or great bodily harm is justified in defense of another only if a person reasonably believes that such force is necessary to prevent death or great bodily harm.

ORDER - 10

ECF No. 154 at 14 (Court's Final Jury Instruction No. 12).  The question before the Court on Defendant's post-conviction Rule 29 motion is whether the evidence, viewed in the light most favorable to the Government, was sufficient to support the verdict, such that any rational trier of fact could have found that Defendant did not reasonably believe stabbing Mr. Tatshama was necessary to prevent death or great bodily harm; that is, that the evidence showed, beyond reasonable doubt, that Defendant "did not act in reasonable defense of another."

The inquiry into the reasonableness of the Defendant's belief turned on the jury's interpretation of what the Defendant perceived, and the necessity and proportionality of the Defendant's response.  The analysis necessarily hinged on the jury's pass upon the credibility and weight of the testimony from numerous witnesses, including the Defendant.  The totality of the circumstances as they were known and appeared to the Defendant were subject to consideration by the jury. The Court's jury instructions did not restrict the jury's inquiry to certain timeframe or evidence.  Defendant interprets the Government's argument as imposing a restriction on the scope of the inquiry to the precise time of the stabbing.  *See* ECF No. 186 at 12.  However, the nature of the threat at the period nearest to the alleged unlawful conduct will often be the period that matters most.  The reasonableness analysis must consider this period in evaluating the amount of force that was necessary.  The Government's emphasis on what Defendant perceived while the

ORDER - 11

heat of the conflict was on, is not unfounded.

The Court concludes sufficient evidence exists such that any rational trier of fact could have found beyond reasonable doubt that Defendant did not reasonably act in defense of another.  Viewing the evidence in the light most favorable to the Government, as the Court must, Mr. Tatshama was heavily intoxicated when Mr. Hahn arrived at the scene.  Mr. Tatshama grabbed his bat, walked Mr. Hahn outside and told him to leave.  Mr. Hahn threw a rock in Mr. Tatshama's direction while Mr. Tatshama's back was turned.  Mr. Tatshama tossed the bat and ran after Mr. Hahn who was attempting to get into a waiting car.  During the subsequent melee, all witnesses testified that Mr. Tatshama grabbed Mr. Hahn's legs in an attempt to pull him out of the vehicle.  Two other witnesses testified they tried to help get Mr. Hahn out of the car.  Defendant testified that she heard yelling, she saw Mr. Tatshama acting aggressively, and she saw Mr. Hahn run for the car.  Defendant testified she was afraid because she "didn't know what was going to happen," she did not believe Mr. Hahn was injured, and she saw people trying to "jerk" Mr. Hahn out of the car.  She then went over to the car and struck Mr. Tatshama in the back with the barbecue fork.  ECF No. 168 at 8-13, 41.  Ms. Shawl testified that she was watching Mr. Tatshama try to "rip" Mr. Hahn out of the car when Mr. Tatshama was stabbed "[l]ike, it was literally out of nowhere." ECF No. 169 at 15.  At trial, Mr. Hahn did not testify.

ORDER - 12

Defendant argues that [n]o rational jury could believe it was unreasonable for Ms. George to perceive a heightened threat to her son." ECF No. 186 at 12. At oral argument, Defendant also argued there was a lack of witness testimony describing the amount of force used in striking Mr. Tatshama. However, as Defendant stipulated that "as a result of being struck or wounded," Mr. Tatshama suffered "serious bodily injury," which has the same definition as "great bodily harm," there was sufficient evidence to conclude Defendant used force at least "likely to cause . . . great bodily harm." Thus, Defendant acted in reasonable defense of another only if she reasonably perceived that such force was "necessary to prevent death or great bodily harm." ECF No. 154 at 14. The jury was entitled to disbelieve the evidence suggesting Mr. Tatshama utilized the bat to hit Mr. Hahn in the leg moments before Mr. Hahn retreated to the vehicle. Every witness testified the bat was not in use when Mr. Tatshama chased after Mr. Hahn. The Court finds that any rational jury could reasonably have concluded that Defendant did not reasonably perceive that Mr. Hahn was in danger of imminent death or great bodily harm and that stabbing Mr. Tatshama from behind was more force than appeared reasonably necessary to defend Mr. Hahn against the danger presented, including Mr. Tatshama's punch.

Defendant contends no rational jury could conclude Defendant's conduct was unreasonable given Mr. Tatshama's hostile intent and his ability to potentially

ORDER - 13

reacquire the discarded bat.  Defendant claims, without citation, the law does not require she "idly wait" for her son to experience a beating with a bat.  ECF No. 186 at 12.  However, threats that are to materialize in the future ordinarily do not rise to the required level of immediacy.  *See* ECF No. 154 at 14 (Court's Final Instruction No. 12 explaining that force is justified against the "immediate use" of unlawful force); *see, e.g.*, *United States v. Ehmer*, 87 F.4th 1073, 1131 (9th Cir. 2023) (fear of future use of force insufficient to justify giving self-defense instruction); *United States v. Lemon*, 824 F.2d 763, 765 (9th Cir. 1987) (no error in refusing to instruct jury on self-defense and defense of third person because he was not under "present" threat of harm); *U.S. v. Wilson*, 698 F.3d 969, 972 (7th Cir. 2012) (absence of reasonable belief in imminent danger where victim was unarmed during the attack although defendant had seen victim with a knife the day before); *U.S. v. Haynes*, 143 F.3d 1089, 1090 (7th Cir. 1998) (no justification for claim of self-defense where defendant engaged in a "preemptive strike" in face of menacing threat of later action, noting that " 'later' and 'imminent' are opposites"); *Wilkins v. Lynch*, No. 19-cv-06119-YGR, 2021 WL 949425, at *26 (N.D. Cal. Mar. 12, 2021) ("Fear of future harm—no matter how great the fear and no matter how great the likelihood of harm—will not suffice [as an imminent threat].").  This is so because a threat to harm in the future may not in fact happen and usually presents an opportunity to avoid the harm and the criminal conduct.  *Haynes*, 143 F.3d at

ORDER - 14

1091.

The test under Rule 29 is not whether this Court believes a rational jury could have found Defendant not guilty. *Nevils*, 598 F.3d at 1164. This was a case that turned on credibility determinations and inferences drawn from the evidence. The Court cannot reweigh the evidence or make its own credibility determinations, but rather, must take the evidence in the light most favorable to the Government, resolve conflicts in the Government's favor, and accept all reasonable inferences that support the verdict. The Government need not provide direct evidence of all elements of the crime; circumstantial evidence and reasonable inferences drawn therefrom can be sufficient to sustain a conviction. *See United States v. Cordova Barajas*, 360 F.3d 1037, 1041 (9th Cir. 2004). After careful review, the Court concludes the evidence, viewed in the light most favorable to the Government, was sufficient on both counts such that any rational jury could find beyond a reasonable doubt that Defendant did not reasonably act in defense of another.

Accordingly, the Court denies Defendant's motion for judgment of acquittal under Rule 29.

**B. Motion for New Trial**

Defendant has not carried the heavy burden of establishing a new trial is warranted under Rule 33.

    *1. "Inappropriate external pressure"*

ORDER - 15

First, Defendant contends her ability to provide "complete and accurate testimony" was improperly impacted by intimidation tactics of Mr. Tatshama before trial and at trial, as well as his presence at trial, and this tainted the verdict. ECF No. 171 at 18-22.  Prior to trial, defense counsel informed Defendant of written statements made by Mr. Tatshama on Facebook containing threatening comments regarding the Defendant and her son.  *See* ECF No. 171-4 at 6-7.  Then at trial, due to claimed vision impairment, Mr. Tatshama was allowed to step off the witness stand to make his identification of the Defendant and did so by walking toward the table where Defendant was seated and gesturing, then returning to the witness stand.  Mr. Tatshama was allowed to observe the trial.  In support of the motion for new trial, Defendant has furnished an affidavit stating Mr. Tatshama's aggressive behavior, testimony, and presence in the courtroom made her scared for her safety when she left the courthouse and it impacted her ability to testify in that she felt distracted, she "rush[ed] through things, and she "couldn't be that open with the jury." ECF No. 171-4 at 7.

Although Defendant knew of the threats made by Mr. Tatshama prior to trial, Defendant did not raise any concern or objection regarding these threats with the Court at trial.  Indeed, at trial, defense counsel utilized one of the statements in cross-examination of Mr. Tatshama.  ECF No. 171-1 at 68-70.

The Court allowed Mr. Tatshama to be present during trial as Congress gave

ORDER - 16

crime victims "[t]he right not to be excluded from any . . . public court proceeding." 18 U.S.C. § 3771(a)(3). Although exceptions exist and are determined on a case-by-case basis, the Court found Mr. Tatshama's behavior during his testimony and his statements made during testimony were insufficient to warrant his exclusion from the remainder of the trial. ECF No. 176 at 5. The Court specifically advised everyone in the courtroom "to watch him" and to advise the Court if "there's any indication that he's doing anything that would influence any testimony." ECF No. 176 at 5. During the remainder of the trial, Defendant did not raise any ongoing concern that his mere presence in the courtroom was having any impact.

Defendant was informed of her right not to testify and she agreed she understood. She also agreed she was required to tell the whole truth. No record was made at the time of her testimony concerning alleged intimidation, nor did Defendant's demeanor on the stand present obvious signs of intimidation to the Court. Other than the after-the-fact contentions in Defendant's affidavit submitted with the motion for new trial, there is no evidence that Mr. Tatshama substantially interfered with Defendant's testimony. Defendant does not attest that her testimony would have been different but for Mr. Tatshama's behavior and presence in the courtroom, nor has Defendant identified any inaccuracy or incomplete aspect of her testimony. *See* ECF No. 171-4. She claims only that she felt rushed,

ORDER - 17

distracted, and not as open in her testimony.  While witness intimidation could present a serious challenge to the integrity of a trial, the Court cannot conclude the interests of justice necessitate a new trial on the grounds set forth in the motion.

  2.  *Sufficiency of the Evidence*

Second, Defendant contends the evidence overwhelmingly weighs against the verdict.  Although a district court assessing a Rule 33 motion "need not view the evidence in the light most favorable to the verdict [and] may ... evaluate for itself the credibility of the witnesses[,]" *United States v. Kellington*, 217 F.3d 1084, 1095 (9th Cir. 2000) (quotation marks and citations omitted), courts disfavor new trial motions based on the sufficiency of the evidence.  *See United States v. Del Toro–Barboza*, 673 F.3d 1136, 1153 (9th Cir. 2012); *see also United States v. Camacho*, 555 F.3d 695, 705 (8th Cir. 2009) ("New trial motions based on the weight of the evidence are generally disfavored[.]").

With respect to the sufficiency of the evidence, the Court denies Defendant's motion for new trial.  Defendant claims "a new trial is necessary because . . . Cassandra Louise George stood up to a bully." ECF No. 171 at 23.  This argument does not support a new trial.  Every witness, including Defendant, testified that during the altercation Mr. Tatshama was unarmed and either trying to pull Mr. Hahn from the vehicle or punching him on the ground.  Defendant admitted she did not believe Mr. Hahn was harmed and stabbed Mr. Tatshama in the back with a

ORDER - 18

barbecue fork to draw the attention to herself and allow her son to get away. The evidence in this case does not present an "exceptional case" in which the "evidence preponderates heavily against the verdict." *Pimentel*, 654 F.2d at 545.

      3. *Possibility of Jury Misunderstanding of the Jury Instruction Re: Defense of Another*

Finally, in the Reply brief, ECF No. 186, Defendant raises the additional argument that the jury could have been potentially confused regarding the jury instructions on the defense of another. A district court need not consider arguments raised for the first time in a reply brief, *see Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007), and although the Court deems the argument untimely and waived, out of an abundance of caution the court nevertheless finds the argument does not merit a new trial.

The Defendant affirmatively agreed with and jointly proposed all the jury instructions given by the Court. The defense of others instruction was in accord with the Ninth Circuit's Model Criminal Instruction. The Ninth Circuit has held that its model instruction on defense of others "accurately states the elements of . . . defense of another in this Circuit." *United States v. Keiser*, 57 F.3d 847, 851 (9th Cir. 1995). Defendant's theory of prejudice is speculative, and Defendant has not offered an alternative instruction for the Court's consideration. The fact that a separate jury in a separate case, *U.S. v. Iraheta*, E.D. Wash No. 2:25-CR-00116-MKD, asked the court questions about the model instruction, is irrelevant here.

ORDER - 19

There were no juror questions regarding the burden of proof or the elements pertaining to defense of others.  The sole question submitted by the jury in this case does not suggest any juror confusion.  *See* ECF No. 151 (jury request to view physical exhibits).  Defendant speculates the jury could have wrongly believed it could only consider evidence pertaining to a "sliver of time" because in the Government's closing argument, counsel said: "whether the defendant reasonably believed it was necessary for her to stab Trent to protect Robert from death or great bodily harm is judged at the moment of the stabbing."  ECF No. 183-4 at 10.  However, the Court explicitly instructed the jury to consider weigh and to evaluate "all the evidence received in the case and, in that process, to decide the facts."  ECF No. 154 at 2.  Defendant also speculates the jury could have wrongly believed that the burden was on Defendant to prove the defense of others, despite the fact the jury instruction explicitly stated the opposite.  The jury was polled at the time the verdicts were returned in open court to assure unanimity.  Absent any circumstances suggesting there is a genuine possibility of actual jury confusion, the Court will not grant a new trial on this basis.

None of the arguments raised by Defendant persuade the Court that the interests of justice require a new trial under Rule 33.

///

///

ORDER - 20

## IV.    CONCLUSION

Accordingly, **IT IS HEREBY ORDERED**:

1.    Defendant's Motion for Judgment of Acquittal under Fed. R. Crim. P. 29 or Motion for New Trial Under Fed. R. Crim. P. 33, **ECF No. 171**, is **DENIED**.

**IT IS SO ORDERED**.  The Clerk is hereby directed to enter this Order and provide copies to counsel, the U.S. Probation Office, and the U.S. Marshals Service.

**DATED** July 15, 2026.

_s/Robert H. Whaley_
ROBERT H. WHALEY
SENIOR UNITED STATES DISTRICT JUDGE

ORDER - 21